UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA FAMILY LIMITED LIABILITY LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>OHIO SECURITY INSURANCE COMPANY and LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendants. | Case No.: 19-CV-2159-CAB-WVG<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 28] |

This matter is before the Court on a motion for summary judgment filed by Defendant Ohio Security Insurance Company ("OSIC"). The motion has been fully briefed, and the Court held oral argument on July 30, 2020. For the following reasons, the motion is granted.

**I.   Background/Undisputed Facts**

This is an insurance coverage and bad faith action arising out of damage that occurred at a property owned by Plaintiff Victoria Family Limited Liability Limited Partnership ("Victoria") on December 28, 2018. Victoria made a claim on an insurance policy issued by OSIC bearing policy number BZS 57316014 (the "Policy"). OSIC denied coverage under the property damage coverage provided by the main coverage form of the

1  Policy, but it paid Victoria $25,000 based on an endorsement to the Policy that extended
2  coverage of up to $25,000 for water back-up and sump pump overflow.
3        Victoria filed this lawsuit against OSIC and Liberty Mutual Insurance Company
4  ("LMIC") for coverage under the Policy for the full amount of its loss. The Court granted
5  LMIC's motion to dismiss on the grounds that LMIC was not a party to the Policy. [Doc.
6  No. 19.] Now, before any discovery has occurred, OSIC moves for summary judgment
7  that there is no coverage under the Policy beyond what OSIC already paid Victoria because
8  of a Water Exclusion in the Policy. Victoria concedes in its opposition that the parties
9  agree on the essential facts concerning its claim. [Doc. No. 31 at 12.] Moreover, while the
10 opposition invites the Court to deny the motion "if the Court finds any material issues of
11 fact" related to the existence of coverage [*id.* at 33], it does not actually identify any such
12 factual disputes. Indeed, although Plaintiff did not cross-move for summary judgment on
13 the breach of contract claim, it opposes OSIC's motion for summary judgment not because
14 there are disputes of fact for the jury concerning coverage, but because, according to
15 Victoria, the undisputed facts demonstrate the existence of coverage under the Policy.
16 These undisputed facts are recounted below.

17                  **A.**    **The Claim**

18       For the purposes of the instant motion at least, OSIC does not dispute the description
19 in the first amended complaint ("FAC") of the loss for which Victoria seeks coverage under
20 the Policy, and Victoria agrees that the parties agree as to the essential facts. [Doc. No. 31
21 at 12.] According to the FAC:

> On or about December 28, 2018, while the Policy was in full force and effect, the Insured Property was damaged by water, including as described below and referred to as the "Water Damage Incident". After normal business hours, an upstairs toilet on the Insured Property malfunctioned and began to flush incessantly. At first, the water went down the toilet drain, but apparently because of a clog down line in the drain system, the water flushing into the toilet eventually could not go down the drain. The flushing water eventually filled the toilet bowl instead of going into the drain and began spilling over the sides of the toilet bowl. The water continued flushing into the toilet bowl, and unable to go down the drain, spilled out of the toilet bowl and spread

> across the floor, flooding the bathroom, nearby rooms, and sending water down the building's walls into the rooms below.

[Doc. No. 12 at ¶ 16.][1] In its opposition, Victoria again acknowledges that that "the toilet drain filled because of a clog down line, causing the continuously flushing water to overflow from the toilet bowl." [Doc. No. 31 at 6, 12.] Victoria also provides additional evidence indicating that the toilet flushing mechanism malfunctioned due to internal corrosion of the components of the flush valve that resulted in the solenoid plunger being stuck open. [*Id.* at 11-13; Doc. No. 31-2.] OSIC does not dispute the details or cause of the toilet flushing mechanism malfunction, arguing only that such details are not material because there is no coverage regardless. This incident caused in excess of $100,000 in water damage to Victoria's property. [Doc. No. 12 at ¶ 17.]

### B. The Policy

There is no dispute that Victoria was a named insured under the Policy and that the Policy was in effect at the time of the incident. The Policy provided a variety of first party property and third party liability insurance coverage, most of which is not in question here. Relevant here, the Policy stated that OSIC "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." [Doc. No. 8-2 at 56 (§ I.A.).] There is no dispute for the purposes of this motion that water overflowing from the toilet caused damage to Covered Property, as that term is defined in the Policy, at the premises described in the Declarations to the Policy.

---

[1] OSIC includes evidence supporting Victoria's allegations in the FAC that a clog prevented water from going down the toilet drain, resulting in it overflowing the toilet bowl. *See* Exhibits B and F to Miller Declaration [Doc. No. 28-3 at 62, 76; Request for Judicial Notice [Doc. No. 28-4 at 9]. Nevertheless, Victoria objects to some of this evidence on various grounds. [Doc. No. 31-5.] Because there is no dispute as to the essential facts concerning the incident [Doc. No. 31 at 12], and because the admissions in the FAC themselves demonstrate the lack of coverage under the Policy, the Court did not consider OSIC's additional evidence in connection with this opinion. Accordingly, OSIC's request for judicial notice and Victoria's evidentiary objections are denied/overruled as moot.

The Policy describes "Covered Causes of Loss" as "Direct physical loss unless the loss is excluded or limited under Section I—Property." [*Id.* at 57 (§ I.A.3.).] Those exclusions to coverage under Section I—Property appear at subsection B, which begins:

> We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

[*Id.* at 75 (§ I.B.1.).] OSIC partially denied Victoria's claim, and argues here for summary judgment of no coverage beyond what it has already paid, based on an exclusion for Water (the "Water Exclusion") that states: "Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment." [*Id.* at 76 (§ I.B.1.g.(3)).]

OSIC paid Victoria the limit of $25,000 pursuant to a "Businessowners Property Extension Endorsement" (the "BPE Endorsement") that modified section I.A.6. of the coverage form to add coverage for "Water Back-up and Sump Overflow" as follows:

> 5. Water Back-up and Sump Overflow
>
>   a. You may extend the insurance provided by this policy to apply to direct physical loss or damage to your covered property caused by or resulting from:
>
>   (1) Water or waterborne material which backs up into a building or structure through sewers or drains contained within a building which are directly connected to a sanitary sewer or septic system; or
>
>   (2) Water or waterborne material which enters into or overflows from a sump, sump pump or related equipment, provided that it is located in a building and designed to remove subsurface water which is drained from the foundation area, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

[*Id.* at 142 (BPE Endorsement § I.G.5.).]

In its opposition, Victoria argues for coverage based on an exclusion for "Other Types of Loss," (the "OTL Exclusion") pursuant to which the Policy states that OSIC "will

4

not pay for loss or damage caused by or resulting from" either "Wear and tear" or "Mechanical breakdown, including rupture or bursting caused by centrifugal force." [*Id.* at 79 (§ I.B.2.l.(1) and (6)).] The OTL Exclusion includes an exception stating" "But if an excluded cause of loss that is listed in Paragraphs (1) through (7) above results in a 'specified cause of loss' or building glass breakage, we will pay for the loss or damage caused by that 'specified cause of loss' or building glass breakage." [*Id.* at 80 (§ I.B.2.l.).] The Policy defines "specified causes of loss" as "fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." [*Id.* at 93 (§ I.H.12.).] The definition of "specified causes of loss" then explains several of these terms, including "water damage," which it defines as:

> c. Water damage means:
>
> (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and
>
> (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.
>
> But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion . . . .
>
> To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

[*Id.* at 93-94 (§ I.H.12.c.).]

Victoria also argues that it is entitled to coverage under an Equipment Breakdown Coverage Endorsement ("EBC Endorsement") to the Policy. This endorsement modified

section A.5. of the coverage form to add coverage for "direct physical damage to Covered Property that is a direct result of an 'accident' to 'covered equipment'." [*Id.* at 153 (EBC Endorsement § I.A.1.).] The EBC Endorsement also incorporated and modified the Water Exclusion and OTL Exclusion as follows:

> All exclusions in the Businessowners Coverage Form apply except as modified below and to the extent that coverage is specifically provided by this Equipment Breakdown Additional Coverage.
>
> 1. The exclusions are modified as follows:
>    a. The following is added to B.1.g.(1) Water Exclusion:
>       However, if electrical 'covered equipment' requires drying out because of Water as described in B.1.g.(1) above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and Deductible for Building or Business Personal Property, whichever applies.
>    b. . . .
>    c. As respects to this endorsement only, the last paragraph of B.2.l. Other Types of Loss Exclusion is deleted and replaced with the following:
>       But if an excluded cause of loss that is listed in Paragraphs 2.l(1) through (7) results in an "accident", we will pay for the loss, damage or expense caused by that "accident".

[*Id.* at 154 (EBC Endorsement § I.B.).] The EBC Endorsement also adds the following definitions of "accident" and "covered equipment" to the definitions in the coverage form:

> 1. "Accident" means a fortuitous event that causes direct physical damage to "covered equipment" that requires repair or replacement. The event must be one of the following:
>    a. Mechanical breakdown, including rupture or bursting caused by centrifugal force;
>    b. Artificially generated electrical current, including arcing that damages electrical devices, appliances or wires;
>    c. Explosion of steam boilers, steam pipes, steam engines, or steam turbines owned or leased by you, or operated under your control;
>    d. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any event inside such equipment, unless otherwise excluded; or

6

    e. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any event inside such boilers or equipment, unless otherwise excluded.

An "accident" does not include the functioning of any safety or protective device, or any other condition, which can be corrected by resetting, tightening, adjusting, cleaning, or the performance of maintenance.

2. "Covered equipment"

    a. "Covered equipment" means Covered Property[2]:

        (1) That generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

        (2) Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

    b. None of the following is "covered equipment":

        (1) Structure, foundation, cabinet, compartment or air supported structure or building;

        (2) Insulating or refractory material;

        (3) Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler system;

        (4) Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

        (5) "Vehicle" or any equipment mounted on a "vehicle";

        (6) Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

        (7) Dragline, excavation or construction equipment; or

        (8) Equipment manufactured by you for sale.

[*Id.* at 155-56 (EBC Endorsement § I.D.1. and 2.).]

---

[2] "Covered Property" is defined at length in the main coverage form as including both buildings and structures and "Business Personal Property. [Doc. No. 8-2 at 56-57 (§ I.A.1.).] Although the parties dispute whether the toilet flushing mechanism constitutes "Covered Property" in connection with whether the malfunction of the mechanism triggers the coverage language in the EBC Endorsement, because the Court does not need to resolve that dispute to grant summary judgment based on the Water Exclusion, the lengthy definition of "Covered Property" is not included here.

## II. Legal Standards

The familiar summary judgment standard applies here.  Under Federal Rule of Civil Procedure 56, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P 56(a).  When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable judge or jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248; *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.").

## III. Discussion

Neither party disputes that California law governs this insurance coverage dispute. *See, e.g., Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (stating that law of the forum state applies in diversity actions).  Under California law, the "interpretation of an insurance policy is a question of law" to be answered by the court. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  The "goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions." *Minkler v. Safeco Inc. Co.*, 49 Cal. 4th 315, 321 (2010) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)).

To accomplish this goal, the court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18; *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language."). "The clear and explicit meaning of [the policy] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation." *Waller*, 11 Cal. 4th at 18 (internal quotation marks and citations omitted); *see also Minkler*, 49 Cal. 4th at 321 ("If contractual language is clear and explicit, it governs.") (citation omitted). However, "[i]f the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], [courts] interpret them to protect the objectively reasonable expectations of the insured." *Minkler*, 49 Cal. 4th at 321 (citations omitted). That being said, "[c]ourts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19.

There are two parts to any coverage analysis. First, "[b]efore even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the policy terms." *Waller*, 11 Cal. 4th at 16 (internal brackets and quotation marks omitted). The insured bears the burden of proof in this regard, but the insuring agreement language in a policy is interpreted broadly in favor of coverage. *See AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990) ("[W]e generally interpret coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured."). If the insured proves that the claim falls within the policy terms, the burden then shifts to the insurer to prove that an exclusion applies. *Waller*, 11 Cal. 4th at 16; *see also Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.*, 929 F.3d 1143, 1151 (9th Cir. 2019) ("The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded.") (quoting *MacKinnon v. Truck Ins. Exch.,* 31 Cal.4th 635, 648 (2003)). Exclusions "are interpreted narrowly against the insurer." *Minkler*, 49 Cal. 4th at 322.

### A. The Water Exclusion

In its motion, OSIC's sole argument for the lack of coverage under the Policy beyond the $25,000 it paid under the BPE Endorsement is that the Water Exclusion applies. Unsurprisingly, OSIC relies on *Cardio Diagnostic Imaging, Inc. v. Farmers Insurance Exchange*, 212 Cal. App. 4th 69 (Cal. Ct. App. 2012), a case involving almost identical facts and interpreting an almost identical water exclusion. In *Cardio Diagnostic*, like here, the policyholder suffered extensive damage due to a toilet that overflowed. *Cardio Diagnostic*, 212 Cal. App. 4th at 71-72. An inspection revealed that "there was a blockage in the sewer line approximately 20 to 40 feet away from the toilet, and that blockage caused the toilet to overflow." *Id.* at 72. The insurer denied the policyholder's claim based on a policy exclusion for "damage caused directly or indirectly by . . . Water that backs up or overflows from a sewer, drain or sump . . . ." *Id.* at 71. The policyholder made various arguments for why the water exclusion did not apply, including that the exclusion only applies to water that comes out of a sewer or drain and not to water that is unable to proceed down the drain, and that the water flowed out of a toilet and not a drain, rendering the exclusion inapplicable. *Id.* at 74-76.

The California appellate court was unpersuaded, holding that the language of the water exclusion was "unambiguous on its face." *Id.* at 76. The Court explained: "A layperson would understand it to include both water that comes up out of a sewer, drain, or sump ("backs up") and water that spills over from a sewer, drain, or sump ("overflows") due to a blockage." *Id.* The court also reject the policyholder's argument about the water coming from a toilet, not a drain, holding:

> The toilet was attached to a drain. Ordinarily, the water (or other substances) that enter the toilet flow through the drain into pipes that lead to the sewer system. If there is a blockage in the pipes or sewer system, the pipes leading to the drain will be filled and any additional water will overflow into, and eventually out of, the toilet. That is what happened here. Therefore, Water Exclusion # 3 applies, and the loss is not covered under the policy at issue.

*Id.* at 76.

Victoria's only response to the applicability of *Cardio Diagnostics* is that the Water Exclusion in the Policy here is somehow narrower because it excludes not only water that "backs up or overflows," like the policy in *Cardio Diagnostics*, but also water that is "otherwise discharged" from a sewer or drain. [Doc. No. 31 at 25-26.] The addition of "or otherwise discharged" to the exclusion, however, only serves to expand the scope of the exclusion, not narrow it. There is no dispute that Victoria's loss here was caused by water that overflowed out of, a toilet. These facts are indistinguishable from *Cardio Diagnostics*, and the Water Exclusion is not only identical in all material respects, but even broader than the exclusion in question there. Accordingly, like *Cardio Diagnositics*, the Water Exclusion here applies and excludes coverage beyond what OSIC paid under the BPE Endorsement.

### B. The Equipment Breakdown Coverage Endorsement

Victoria argues that there is coverage under the EBC Endorsement. Yet, the EBC Endorsement merely provides additional coverage to which the Water Exclusion still applies. Even assuming the malfunctioning toilet flushing mechanism would otherwise trigger the coverage language from the EBC Endorsement, the Endorsement expressly states that "all exclusions" in the coverage form apply except as modified in the EBC Endorsement. [Doc. No. 8-2 at 154.] The EBC Endorsement does not modify paragraph 3 of the Water Exclusion. The Water Exclusion therefore applies "to the extent that coverage is specifically provided by" the EBC Endorsement. In other words, even if the malfunctioning toilet mechanism would otherwise trigger coverage under the EBC Endorsement,[3] there is no coverage for the loss suffered here because of the Water Exclusion. [*Id.*]

---

[3] Because the Water Exclusion applies regardless, the Court need not consider whether Victoria has satisfied its burden to establish that the loss here constitutes "direct physical damage to Covered Property that is a direct result of an 'accident' to 'covered equipment'." [Doc. No. 8-2 at 153 (EBC Endorsement § I.A.1.).]

11

## C. The "Other Types of Loss" Exclusion

Victoria also argues that there is coverage here based on exceptions to the OTL Exclusion. First, it argues that there is coverage under the exception to the OTL Exclusion in the main policy form for damage caused by a "specified cause of loss." [Doc. No. 8-2 at 80, 93-94.] Second, it argues that there is coverage under a modification made in the EBC Endorsement, which replaces the exception to the OTL Exclusion for a "specified cause of loss," with language providing coverage, notwithstanding the OTL Exclusion, for damage caused by an "accident" to "covered equipment." [*Id.* at 154.] However, regardless of whether either of these exceptions to the OTL Exclusion render the OTL Exclusion inapplicable, neither of these exceptions render the Water Exclusion inapplicable.

An "exclusion cannot act as an additional grant or extension of coverage." *St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal. App. 3d 888, 896 (Cal. Ct. App. 1978). Thus, an exception to an exclusion "remains subject to and limited by all other related exclusions contained in the policy." *Id.* Moreover, both versions of the exceptions to the OTL Exclusion on which Victoria relies expressly state that the Water Exclusion still applies. The main policy form states that "water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion." [Doc. No. 8-2 at 93-94 (§ I.H.12.c.).] Meanwhile, the EBC Endorsement states that "[a]ll exclusions to the Businessowners Coverage Form apply except as modified below," and it does not modify paragraph 3 of the Water Exclusion. [*Id.* at 154 (EBC Endorsement § I.B.).] Thus, although both exceptions to the OTL Exclusion allow for the possibility of coverage in certain circumstances that would otherwise be excluded by the OTL Exclusion, neither exception allows for coverage that would otherwise be excluded by the Water Exclusion. The effect of the Water Exclusion is not limited simply because the *OTL Exclusion* is limited by an exception. *See generally N. Ins. Co. of New York, v. Allied Mut. Ins. Co.*, No. C 94-3010 FMS, 1995 WL 599024, at *5 (N.D. Cal. Oct. 2, 1995) (citing *Coss* and holding that "the effect of [one exclusion] should not be vitiated simply because *another* exclusion is limited

by an exception") (*emphasis* in original), *aff'd*, 107 F.3d 877 (9th Cir. 1997). Accordingly, even if the toilet flushing mechanism malfunction was a "specified cause of loss" or an "accident" to "covered equipment," the Water Exclusion still applies.

### D.     Efficient Proximate Cause Theory

Victoria argues that if the Court finds that the loss was caused by both (1) the malfunctioning flushing mechanism, which Victoria argues triggers coverage under the EBC Endorsement and the exceptions to the OTL Exclusion, and (2) by water that backs up or overflows from a sewer or drain, thereby falling within the Water Exclusion, the efficient proximate cause doctrine requires coverage. "Under the efficient proximate cause theory, a loss that is caused by a combination of covered and excluded risks is covered if the covered risk is the efficient proximate cause of the loss." *Penn-Am. Ins. Co. v. Mike's Tailoring*, 125 Cal. App. 4th 884, 891 (2005). The doctrine:

> is based on Cal. Ins. Code § 530. *Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 750, Cal.Rptr.3d 648, 110 P.3d 903, (2005). Section 530 states that "[a]n insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause." Cal. Ins. Code § 530. The efficient proximate cause doctrine is a corollary to this section, and courts have held that "the insurer owes policy benefits to the insured if the efficient proximate cause of the loss is a covered peril, even when other specifically excluded perils contribute to the loss." *Julian*, 35 Cal. 4th at 762 (Brown, J., concurring).

*Moore v. Safeco Ins. Co. of Am.*, No. CV1101891DMGAJWX, 2012 WL 12906077, at *7 (C.D. Cal. Aug. 7, 2012), *aff'd*, 549 F. App'x 651 (9th Cir. 2013). At the same time, "the fact that a policy provides coverage for some, but not all, manifestations of each constituent peril does not necessarily render the clause naming and excluding the 'combined' peril invalid pursuant to section 530 and the efficient proximate cause doctrine." *Julian*, 35 Cal. 4th at 759.

"[T]he efficient proximate cause doctrine applies only when there are two or more distinct perils that cause a loss. In other words, the perils must be such that 'they *could*

each, *under some circumstances*, have occurred independently of the other and caused damage.'" *De Bruyn v. Superior Court*, 158 Cal. App. 4th 1213, 1223 (Cal. Ct. App. 2008) (quoting *Finn v. Cont'l Ins. Co.*, 218 Cal. App. 3d 69, 72 (Cal. Ct. App. 1990)) (*emphasis* in original). "The purpose of the efficient proximate cause doctrine is . . . to bring about a fair result within the reasonable expectations of both the insured and the insurer." *Id.* at 1224 (internal quotation marks omitted). "The question . . . is whether the policy 'plainly and precisely communicate[s] an excluded risk' to a reasonable insured." *Id.* (quoting *Julian*, 35 Cal. 4th at 759).

The efficient proximate cause theory does not apply here because there are not two distinct perils that caused the damage to Victoria's building.  "When the damage is not caused by two distinct causes, but rather by a single cause, albeit one susceptible to various characterizations, the efficient proximate cause analysis has no application." *Pieper v. Commercial Underwriters Ins. Co.*, 59 Cal. App. 4th 1008, 1020 (Cal. Ct. App. 1997) (internal quotation marks omitted).  Here, neither the malfunctioning flushing mechanism nor the clogged drain pipe could have caused the toilet to overflow without the other. Without the clog, the continuous flushing of the toilet would not cause the toilet to overflow.  Conversely, if the toilet was never flushed, there would be no water to back up and overflow the toilet as a result of the clog.[4]  Regardless of the source of the water that overflowed from the toilet, or of the reason that the toilet overflowed, there is only one cause of the damage to Victoria's property—the overflowing water from the toilet. *See Mike's Tailoring*, 125 Cal. App. 4th at 892 ("Likewise, we conclude that regardless of what may have initiated the obstruction of the sewer beneath [the insured's] basement, there was only one cause of the damage, the backup of water in the sewer clean-out pipe."); *see also*

---

[4] It could be argued that a clogged pipe could eventually result in the type of loss suffered here independently of any toilet flushing mechanism malfunction because regular usage of the toilet would eventually result in a back up and overflow of water if the clog in the drain pipe was not removed. Regardless, the cause of the loss here was neither the broken toilet flushing mechanism nor the clog in the pipe.  The cause of the loss was water overflowing from the toilet.

*Pieper*, 59 Cal. App. 4th at 1020 (holding that where a policy covered arson but contained a brush fire exclusion, a brush fire that started by arson did not implicate the efficient proximate cause doctrine because the damage to the policyholders was due to one cause, the brush fire, and that the circumstances in which the brush fire was ignited was irrelevant); *Finn*, 218 Cal. App. 3d at 70 ("Where a homeowner's broad peril policy for property damage excludes damage from 'continuous or repeated seepage or leakage' from the plumbing system, the insurer cannot be made liable for such leakage damage on the theory that the efficient proximate cause of the leakage was a sudden break in the pipe, an included peril."). That cause of damage, water that overflowed out of a toilet, is unambiguously excluded from coverage by the Water Exclusion. Accordingly, the efficient proximate cause theory does not apply to create coverage for Victoria.

### E. Implied Covenant of Good Faith and Fair Dealing

OSIC also moves for summary judgment on Victoria's claim for breach of the implied covenant of good faith and fair dealing. The parties' arguments on this aspect of the motion focus primarily on whether the Court should enter summary judgment even if it denies summary judgment on the breach of contract claim. A threshold requirement for a claim for breach of the covenant of good faith and fair dealing, however, is that "benefits due under the policy must have been withheld." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151, (Cal. Ct. App. 1990) ("[T]here are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause."). Because no benefits beyond what OSIC has already paid are due under the Policy, the implied covenant of good faith and fair dealing claim fails as a matter of law. *See OneWest Bank v. Houston Cas. Co.*, 676 F. App'x 664, 666 (9th Cir. 2017) ("Because [the insured] cannot establish that [the insurer] has withheld benefits due under the policy, its implied-covenant claim must fail as a matter of law."); *see also Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 408 (2000) ("Of course, without coverage there can be no liability for bad faith on the part of the insurer.").

## IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED** that OSIC's motion for summary judgment is **GRANTED**.

It is **SO ORDERED**.

Dated: July 31, 2020

Hon. Cathy Ann Bencivengo
United States District Judge